**REVISED 3/27/01**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-40925

---

JAY MAYNARD FINLEY,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

March 8, 2001

HILL*,  JOLLY, and BENAVIDES, Circuit Judges.

* Circuit Judge of the Eleventh Circuit, sitting by designation.

JAMES C. HILL, Circuit Judge:

Jay Maynard Finley was convicted of aggravated kidnapping in Texas state court and sentenced to ten years' imprisonment, probated for five years; his probation was later revoked and he was incarcerated. After his appeal and state habeas corpus petitions were denied, he petitioned for federal relief pursuant to 28 U.S.C. § 2254. The district court denied the petition as procedurally barred and this appeal ensued.

I.

Jay Maynard Finley was a city councilman for the City of Gladewater, Texas. On July 10, 1994, Finley picked up Louis Towery to take him to see a trailer that Towery wanted to rent. On the way, Finley asked Towery if he had been molesting Erika, Towery's daughter. Towery denied it. Finley said that the daughter had told the police that he had. At that point, Towery became upset and said that "she had run her f**ing head" and that he was going to have to "get them all." A few minutes later, Towery commented that he was going to "kill the bitch." After they arrived at their destination, Finley put a gun to Towery's side and asked him again whether he had been molesting Erika for years. Towery then confessed that he had.[1]

_____

[1]Towery's daughter testified at trial to his years of sexual assaulting her. Towery himself testified and admitted under oath that he held a gun to his daughter's head on at least one occasion.

2

Finley bound Towery up with duct tape and took him to the Gilmer police station.  When they arrived, however, Finley became nervous because he believed that Towery was related to a Gilmer police sergeant named Ronald Towery.  Instead of taking Towery inside the station, he drove back toward Gladewater and left him tied to a mailbox near the Union Grove Cemetery.  Finley called the Gladewater Police Department and told them to go pick Towery up.  Towery was released by the police a few minutes later.

At trial, Finley raised the defense of necessity, arguing that his actions were necessary to protect Towery's wife, Martha, and Erika from immediate harm.  He was, however, convicted of aggravated kidnapping and was sentenced to ten years confinement, probated for five years.  He filed no notice of appeal.

On October  27, 1995, Finley's probation was revoked, and he filed a notice of appeal of the revocation that same day.  On November 27, 1995, he filed a motion for a new trial.  In each of these applications for relief, Finley asserted that he was entitled to a new trial because the prosecution improperly suppressed exculpatory evidence at trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  He contended that because he had filed a pre-trial motion pursuant to *Brady*, the prosecutor was required to, but did not, reveal that, two days after the alleged kidnapping, the prosecutor had secured a restraining order against Towery based on claims of sexual assault and domestic

3

violence.  In neither of these pleadings, however, did Towery allege when he learned of this fact.

There was no ruling on Finley's motion for a new trial and it was overruled by operation of law after the passage of 75 days.  Tex. R. App. P. 21.8(c).  His probation revocation appeal was denied on March 14, 1997, in an unpublished opinion.  He filed an application for a writ of habeas corpus reasserting his *Brady* claim, but the Texas Court of Criminal Appeals denied it without written order on December 9, 1998.[2]

Finley filed the instant application for federal habeas relief on February 26, 1999.  In it, he reasserts his *Brady* claim.  On July 12, 1999, the district court adopted the Magistrate Judge's Report and Recommendation and held that Finley has procedurally defaulted federal review of this claim and dismissed the petition with prejudice.  Finley timely filed this appeal.

In order to obtain a Certificate of Appealability ("COA") from the district court, Finley had to make a substantial showing that he had been denied a federal right.  *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996).  To do this, he had to demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the

---

[2]He filed a petition for discretionary review which was refused by the Texas Court of Criminal Appeals on November 5, 1997.

4

questions are adequate to deserve encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995). The district court held that he had made such a showing with regard to whether dismissal of his petition on the grounds of procedural default might result in a fundamental miscarriage of justice. On August 23, 1999, it granted him a COA on this issue.

Finley filed a motion with this court for a COA on the issue of whether the district court erred in holding that his *Brady* claim has been procedurally defaulted. On April 3, 2000, we certified this additional ground for appeal.

We review the district court's findings of fact on these two issues for clear error, but conduct a *de novo* review of its conclusions of law. *Mann v. Scott,* 41 F.3d 968, 973 (5th Cir. 1994).

II.

A.   Procedural Default

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. *Coleman v. Thompson,* 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). To satisfy the "independent" and "adequate"

5

requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. *See Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995). This rule applies to state court judgments on both substantive and procedural grounds. *Id.* Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The last state court to consider Finley's *Brady* claim was the Texas Court of Criminal Appeals which did not issue a written opinion when it dismissed his habeas petition. Pursuant to *Ylst*, the federal court "looked through" this unexplained decision to find the last state court which issued a reasoned opinion on the issue. That court – The Texas Court of Appeals – had before it Finley's appeal of his probation revocation. Absent any allegation that the *Brady* claim was newly discovered, the court rejected Finley's attempt to raise it, holding that all such claims which could have been raised on direct appeal of his conviction were barred. *See Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Cr. App. 1996). Furthermore, the court held that the validity of the original conviction could not be challenged in the appeal of his probation revocation order. The federal

6

district court interpreted this decision as a holding that Finley's *Brady* claim was procedurally barred from state review. The district court held, therefore, that the claim was barred from federal habeas review as well. *See Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

Finley argues that the district court's interpretation of the Texas court's decision is erroneous. He contends that the Texas Court of Appeals did not hold that his *Brady* claim was procedurally defaulted; only that it was without jurisdiction to hear that claim in the context of an appeal of his probation revocation. He contends that no Texas court has held that it was procedurally defaulted. Furthermore, he argues that we should hold that this claim is cognizable on federal habeas review because he was unaware of the facts underlying his *Brady* claim until long after the time for filing an appeal of his underlying conviction had expired.

This argument has *never* been made to a Texas court – not on direct appeal of his probation revocation, not in his motion for new trial, not in his petition for discretionary review, not in his state habeas petition. In fact, the first time this argument appears in this case is in Finley's objections to the magistrate's report recommending that the district court deny the

*Brady* claim on the grounds of procedural default.[3]  Such a claim

of newly discovered evidence may well have supported his *Brady*

claim in his motion for new trial or on state collateral attack,

but it is clear that, absent such an argument in those forums,

Finley's *Brady* claim was procedurally barred there since it is

the sort of claim that could have been raised on direct appeal

but was not.  *Gardner*, 959 S.W.2d at 199.  If there is a valid

reason why it was not, Finley has never shared that reason with

the state courts.

Furthermore, since Finley now seeks federal habeas relief

based upon factual allegations that he has never made in the

Texas courts, it is clear that he has failed to exhaust his state

remedies.  *Nobles*, 127 F.3d at 419-20.  To exhaust his state

remedies, a habeas petitioner must  fairly present the substance

of his claim to the state courts.  *Piccard v. Connor*, 404 U.S.

270, 275-76 (1971).  The exhaustion requirement is not met if the

petitioner presents new legal theories or factual claims in his

federal habeas petition.  *Anderson v. Harless*, 459 U.S. 4, 6-7

(1982).

Finley cannot return to the Texas courts to cure this

deficiency, however, because the Texas abuse of the writ doctrine

---

[3]We have held that issues raised for the first time
in objections to the report of a magistrate judge are
not properly before the district judge.  *United State
v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992).

8

prohibits a second habeas petition, absent a showing of cause, if the petitioner urges grounds therein that could have been, but were not, raised in his first habeas petition. *Nobles*, 127 F.3d at 422-23. Obviously, he could have asserted the newness of his discovery of the *Brady* violation in his first habeas petition. He asserted the violation; he must have known when he learned of it.

Thus, Texas would bar a second petition by Finley and this bar represents an additional adequate state procedural ground which bars federal review of his claim. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995), *citing Coleman v.*

*Thompson*, 501 U.S. 722, 735 n.1 (1991).[4]  We conclude, therefore, that Finley has procedurally defaulted his *Brady* claim.[5]

B.    Miscarriage of Justice

Procedural default of a federal claim in state court bars federal habeas review of that claim unless the petitioner can show "cause" for the default and "prejudice" attributable thereto, *Murray v. Carrier*, 477 U.S. 478, 485 (1986), or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Id.* at 495. The second issue certified to us on appeal is whether, if

---

[4]A procedural default may be excused upon a showing of cause and prejudice. *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999).  Although the issue of cause is not before us, we note that none of Finley's pleadings, whether in state or federal court, advance the theory that he did not raise this issue on direct appeal of his conviction because the existence of the undisclosed evidence was not known, nor could it have been known, at the time that he could have appealed.  Thus, Finley has failed to show cause for his procedural default and a second state habeas petition raising this argument would be barred by Texas as an abuse of the writ. *Sones*, 61 F.3d at 416.

[5]Nor can Finley return to Texas to collaterally attack his conviction on the grounds of ineffective assistance of counsel.  Not only would such a petition be barred as successive since these grounds could have been raised in the first petition, but relief on the merits would be denied since there is no constitutional right to counsel in state collateral proceedings. *Coleman*, 501 U.S. at 752.

Finley's *Brady* claim has been procedurally defaulted, as we have found that it has, a fundamental miscarriage of justice will occur.

The fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him. *See Coleman*, 501 U.S. at 750; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted. *Fairman*, 188 F.3d at 644.

The government argued and the district court concluded that Finley is unable to meet this requirement because he has never denied that he abducted Towery. The district court reasoned that merely showing facts which supported a defense of necessity which the jury might or might not have accepted does not meet the requirement for a showing of "actual innocence" because there is no claim that the defendant did not actually commit the acts of which he is accused.

This is a troublesome proposition. Finley's defense was that, although he committed the *acts* alleged against him, he was innocent of the *crime* of kidnapping because he reasonably believed his acts were immediately necessary to avoid imminent

11

harm to Towery's wife and daughter.[6]  Under these circumstances, the district court's conclusion that Finley cannot show "actual innocence" seems a too restrictive interpretation of the requirement.  The purpose of the exception is to prevent a miscarriage of justice by the conviction of someone who is entitled to be acquitted because "he did not commit the *crime* of conviction."  *Fairman*, 188 F.3d at 644.

"To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Fairman*, 188 F.3d at 644, quoting *Schlup v. Delo*, 513 U.S. 298 (1995).  In *Fairman*, the petitioner's claim of self-defense at trial was supported years later by an eyewitness who recanted his earlier trial testimony to the contrary.  *Id.*  We held that the petitioner had satisfied the *Ward* threshold for showing actual

---

[6]Pursuant to the Texas Penal Code § 9.22 (Necessity), conduct is justified if "(1) the actor reasonably relieves the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear . . . ."

innocence because "belief in [the eyewitness] testimony confirms [the petitioner's] claim of self-defense such that it was not just possible but more likely than not that no reasonable juror would have convicted him." *Id.* at 645.

In this case, Finley has pointed to new evidence which is both undisputed and highly probative of his affirmative defense of necessity. While knowledge of the restraining order would not have required the jury to accept this affirmative defense, it would have significantly bolstered Finley's necessity defense and would have undermined the prosecutor's ability to argue that there was "no way" that Towery posed any immediate threat to his family on the day Finley left him for police to find. Finley's new evidence confirms his claim of necessity and it is not just possible but more likely than not that no reasonable juror would have convicted him. We conclude that a showing of facts which are highly probative of an affirmative defense which if accepted by a jury would result in the defendant's acquittal constitutes a sufficient showing of "actual innocence" to exempt a *Brady* claim from the bar of procedural default.

The question then becomes whether Finley has made such a showing. We believe that he has. At trial, Finley claimed his conduct was not culpable because it was immediately necessary to protect Towery's wife and daughter. The prosecutor responded to this claim with the following argument:

13

> You must find that it was immediately necessary for Jay Finley to do what he did. It wasn't immediate. There is no such defense, he's got no defense, and he's guilty. How in the world was this child in immediate danger or Martha Towery in immediate danger when they were miles away and Louis Towery had no means of transportation? No way. That's right. No way in the world.

Yet, the same prosecutor had represented to the court, only two days after the alleged kidnapping, that Towery must be restrained from contact with his wife and daughter because he had committed violence against them and there was a clear and present danger of more violence which would cause "immediate and irreparable injury, loss, and damage." The supporting affidavit of Martha Towery stated that her daughter Erika was "scared to death" of Towery and feared that he would continue to molest her if he were allowed to remain in the house.

If the jury had heard this evidence, there is at least a reasonable probability that they would have rejected the prosecutor's argument that there was "no way in the world" that Towery's wife and daughter were in any *immediate* danger the day Finley abducted him and took him to the police station. Under these circumstances, we hold that Finley has made out a sufficient showing of "actual innocence" to satisfy the fundamental miscarriage of justice exception for his procedurally defaulted *Brady* claim.

III.

14

Finley failed to exhaust his *Brady* claim in the state courts and he is now procedurally barred from doing so there. This bar also operates to prevent federal habeas review of this claim. He has made a sufficient showing, however, that application of this bar under the circumstances of this case would result in a miscarriage of justice. Accordingly, we affirm the judgment of the district court that Finley's *Brady* claim is barred from federal habeas review, but grant relief from this bar on the grounds that application of it to this case would result in a miscarriage of justice. The judgment of the district court is REVERSED and this case is remanded to the district court for consideration of Finley's *Brady* claim on the merits.