**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 02-40980
_____


JAY MAYNARD FINLEY,

Petitioner-Appellee,

versus


JANIE COCKRELL, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellant.

_____

On Appeal from the United States District Court
For the Eastern District of Texas
(Civil Action No. 99-CV-98)
_____

October 1, 2002


Before GARWOOD and CLEMENT, Circuit Judges, and RESTANI, Judge.[*]

PER CURIAM:[**]

Jay Maynard Finley, a Gladewater city councilman, was convicted of aggravated kidnapping in May 1995 and sentenced to ten years of confinement, placed on probation for five years. Following revocation of his probation in October 1995, Finley filed

_____

[*] Judge of the U.S. Court of International Trade, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

a notice of appeal of the revocation and a motion for a new trial. Both were denied, as was his state application for habeas relief. Finley then petitioned for federal relief pursuant to 28 U.S.C. § 2254, asserting that the prosecution suppressed exculpatory evidence relevant to his necessity defense in violation of Brady v. Maryland, 373 U.S. 83 (1963). A panel of this Court affirmed the district court's judgment that Finley procedurally defaulted the Brady claim, but granted relief from the bar on the grounds that its application would result in a miscarriage of justice. The panel remanded for "consideration of Finley's Brady claim on the merits." See Finley v. Johnson, 243 F.3d 215, 222 (5th Cir. 2001). On remand, the district court adopted the magistrate's report and recommendation and granted a writ of habeas corpus.

Appellant contests the grant of habeas, claiming that the district court erred in finding that the prosecution suppressed the relevant evidence and further that the district court did not fully consider the Brady claim on the merits. For the reasons given below, we affirm the district court.

Facts

On July 10, 1994, Louis Towery called Finley to ask for a ride to James McKinley's. Finley knew that Towery had been sexually molesting his daughter Erika Towery for years and that the police had not taken action when Erika and her mother Martha reported the abuse. Before picking up Towery, Finley called the chief of police

2

and asked if he knew of Erika's report. When the chief told Finley that he would check into it on Monday, Finley replied that he "didn't have time to wait until then" and that "something [was] going to have to be done with it."

While Finley and Towery were driving to McKinley's, Finley brought up the alleged molestations. When Finley told Towery that Erika had talked to the police, Towery became upset and made comments such as: "she had run her f***ing head" and he was going to "get them all" and "kill the bitch." In McKinley's house, Towery confessed to molesting Erika when Finley put a gun to Towery's side.

McKinley and Finley bound Towery with duct tape and took him to the police station in a town neighboring Gladewater. However, once at the station, they decided not to go in out of concern that Towery was related to a police sergeant named Ronald Towery. Instead, they left Towery tied to a mailbox near the Union Grove Cemetery and called the Gladewater Police Department to report Towery's location.

At trial, Finley raised the defense of necessity,[1] arguing that his actions were necessary to protect Towery's wife and daughter from immediate harm. Finley testified that Towery always carried a gun, had taken some pills on the way to McKinley's house,

---

[1] The necessity defense states that conduct is justified if "the actor reasonably believes the conduct is immediately necessary to avoid imminent harm." Tex. Penal Code § 9.22(1).

3

and threatened to kill Martha and Erika. The jury did not find enough supporting evidence for the necessity defense; however they ruled without knowledge of a protective order granted to Martha two days after the incident that led to Finley's prosecution.

Martha's application for a protective order against her husband stated that she "reasonably believe[d] that family violence ha[d] been committed by Louis Towery and that there [wa]s clear and present danger of family violence that w[ould] cause the applicant and others named immediate and irreparable injury, loss, and damage." The supporting affidavit, which was signed the day after the incident between Towery and Finley, stated that Erika was "scared to death" of her father and feared that he would continue to molest her if allowed to remain in the house. The prosecution knew of the order; in fact, the district attorney who prosecuted Finley obtained the protective order. Defense counsel was unaware of the protective order until after the time for seeking a new trial had passed; it was not in the state's files produced to defense counsel and, in fact, had been placed under seal.

<u>Analysis</u>

Brady v. Maryland, 373 U.S. 83 (1963), "requires that the prosecution disclose to the defense both exculpatory evidence and evidence that would be useful for impeachment. To prevail on [a] Brady claim, [petitioner] must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense,

4

and (3) the evidence was material." Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) (internal citations omitted); see Strickler v. Greene, 527 U.S. 263, 280 (1999) ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."). We review findings of fact for clear error and issues of law de novo. Dyer v. Johnson, 108 F.3d 607, 609 (5th Cir. 1997).

*Suppression of the Protective Order*

"A Brady violation does not arise if the defendant, using reasonable diligence, could have obtained the information." Williams v. Scott, 35 F.3d 159, 163 (5th Cir. 1994) (citing United States v. Ramirez, 810 F.2d 1338, 1343 (5th Cir.)). Reasonable diligence would not have surfaced the protective order. The order was under seal. The prosecutor admitted that he did not give Finley a copy of the protective order. He further conceded that the application for the protective order was not in the file produced to Finley.

Appellant argues that since Finley knew that Towery had been convicted of sexual assault and had access to Martha and Erika Towery, defense counsel should have known of the protective order. However, defense counsel had no reason to ask about an order of which he had no knowledge; counsel could only have learned of the

5

protective order if Martha or Erika had mentioned it. As the magistrate court wrote in its report and recommendation adopted by the district court, "[t]he State's constitutional duty to disclose exculpatory evidence is not satisfied by the fact that a non-attorney witness might happen to volunteer evidence about which the defense knows nothing." The district court did not err in finding that the prosecution suppressed the application for the protective order.

*The District Court's Consideration of the Merits*

The second and third components of a Brady claim require that the suppressed evidence be material and favorable to the defense. Drew v. Collins, 964 F.2d 411, 419 (5th Cir.1992). Appellant claims that the district court relied solely on the "law of the case" doctrine in ruling that the protective order was favorable and material and did not put the independent analysis into its decision that this Court's order to consider "Finley's Brady claim on the merits" required. The law of the case doctrine

> "precludes reexamination of issues of law or fact decided on appeal . . . [and] applies only to issues that were actually decided . . . [T]he issues need not have been explicitly decided; the doctrine also applies to those issues decided by necessary implication. In other words, even when issues have not been expressly addressed in a prior decision, if those matters were fully briefed to the appellate court and . . . necessary predicates to the [court's] ability to address the issue or issues specifically discussed, [those issues] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case." Alpha/Omega Ins. Services, Inc. v. Prudential Ins. Co. of Am., 272 F.3d 276, 279 (5th Cir. 2001) (internal citations and quotes omitted).

6

Since, as explained below, we find that the district court put sufficient independent analysis into its ruling on the favorableness and materiality of the evidence, we do not have to decide whether or not the district court could rely on the law of the case doctrine. However, it is worth noting that in order to grant relief from the procedural bar on habeas this Court had to find that a miscarriage of justice would result. As the panel stated, "[t]he fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley, 243 F.3d at 220 (internal citations omitted). "To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Fairman v. Anderson, 188 F.3d 635, 644 (5th Cir. 1999) (internal quote omitted). Material evidence in the Brady context is evidence that raises "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 680-82 (1985). Putting the Brady and

7

miscarriage of justice standards side-by-side reveals that to find a miscarriage of justice, this Court implicitly found that the evidence that had surfaced after trial was material and favorable to the defendant.

However, we do not have to find that the second and third prongs of Brady were implied in our ruling that relief from the procedural bar to habeas be granted. We remanded "for consideration of Finley's Brady claim on the merits" and the district court adequately considered that claim. The district court confronted appellant's law of the case doctrine arguments in its memorandum adopting the magistrate's report and recommendation and stated that it had "conducted a careful *de novo* review of the pleadings in this case, including the original petition, the answer of the Respondent, the Petitioner's response thereto, the testimony at the evidentiary hearing, the Report of the Magistrate Judge, the Respondent's objections thereto, and all records, pleadings, and filings in the case." Reading the opinion as a whole and in the context of the proceedings held, we find that the district court conducted sufficient independent analysis in finding a Brady violation. None of the evidence reviewed by the lower court gave it reason to question this Court's statements that "Finley has pointed to new evidence which is both undisputed and highly probative of his affirmative defense of necessity. [And] Finley's new evidence confirms his claim of necessity and it is not just

8

possible but more likely than not that no reasonable juror would have convicted him." Finley, 243 F.3d at 221. The district court did not err in finding that evidence of the protective order was material and favorable to the defense.

### Conclusion

The district court's grant of habeas is affirmed.