United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 31, 2006**

Charles R. Fulbruge III
Clerk

verIN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-70029
_____

JAMES EDWARD MARTINEZ,

Petitioner-Appellant,

v.

DOUG DRETKE, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas
(04-CV-728)

_____

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[1]

James Martinez was convicted and sentenced to death for the
murders of Sandra Walton and Michael Humpreys. Martinez
initially raised 11 claims for relief in his state habeas
petition, and later sought to supplement his petition with
additional claims. After denial of relief in the state court,

_____

[1] Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Martinez filed his federal habeas petition in the district court, raising 29 claims for relief. The district court denied relief and *sua sponte* denied a certificate of appealability, and Martinez now seeks a certificate of appealability to appeal the district court's denial of relief under 28 U.S.C. § 2254.[2] For the reasons stated below, we deny COA.

I.

A.

Martinez was indicted, convicted, and sentenced to death in Tarrant County, Texas, for the September 21, 2000, murders of Sandra Walton and Michael Humphreys. Martinez's conviction and sentence were affirmed on direct appeal by the Texas Court of Criminal Appeals, <u>Martinez v. State</u>, No. 74,292, 2003 WL 22508081 (Tex. Crim. App. Nov. 5, 2003), and certiorari was denied by the United States Supreme Court, <u>Martinez v. Texas</u>, 125 S.Ct. 32 (2004).

---

[2] Martinez ostensibly raises two "issues," denominated "Ineffective Assistance of Trial Counsel" and "Unconstitutionality of Texas Death Procedures as applied to Appellant." Each issue, however, comprises several related and overlapping questions and subparts, some of which are repeated verbatim from Martinez' initial petition, and some of which are reformulated and combined versions of issues previously raised. Because the issues as presented by Martinez are repetitive and overlapping, certain issues are grouped for purposes of discussion.

Martinez filed his state application for writ of habeas corpus in October of 2003, raising eleven grounds for relief. In December 2003, Martinez filed a motion to supplement his writ with additional claims. The trial court entered findings of fact and conclusions of law recommending that relief be denied on Martinez's original claims, and that his supplemental claims be dismissed as a subsequent application. The Court of Criminal Appeals ultimately adopted those findings. Ex parte Martinez, No. 59,313-01 (Tex. Crim. App. Sept. 22, 2004). The motion for leave to add claims was treated as a subsequent application and dismissed. Ex parte Martinez, No. 59,313-02 (Tex. Crim. App. Sept. 22, 2004).[3] Martinez's related petition for writ of certiorari was denied. Martinez v. Texas, 125 S.Ct. 1401 (2005).

---

[3] The order stated, in pertinent part:

> This Court has reviewed the record with respect to the eleven allegations made by Applicant in his initial application. We adopt the trial judge's findings and conclusions. Based upon the trial court's findings and conclusions and our own review, the relief sought is denied.

> With respect to Applicant's two subsequently filed allegations, we conclude that Applicant has failed to show the factual or legal bases of his claims were unavailable to him at the time he filed his initial application. Therefore, those claims are dismissed pursuant to Code of Criminal Procedure Article 11.071 § 5. Ex parte Graves, 70 S.W.3d 103 (Tex. Crim. App. 2002).

Ex parte Martinez, Nos. 59,313-01 & 59,313-02, slip op. at 2 (Tex. Crim. App. Sept. 22, 2004).

3

Martinez filed his petition for federal habeas relief in the federal district court in January of 2005 and included 29 related and overlapping claims for relief. The district court denied Martinez's petition, rejecting each of Martinez's claims in a thorough and reasoned order. Martinez timely filed a notice of appeal, and although not requested, the district court *sua sponte* denied COA as to each of the 29 claims. This request for COA followed.

## B.

The district court succinctly summarized the facts of Martinez's offense:

> Martinez briefly dated Walton, and gave or loaned her money from time to time. In May of 2000, Walton signed a promissory note reflecting that she owed Martinez $1,000. Martinez became fixated on obtaining repayment from her, stalking, harassing, and threatening Walton on numerous occasions. On the night of her murder, Martinez pounded on Walton's door, threatening to break it down if she did not open the door. He had earlier told Walton that her time was almost up. Walton and Humphreys, who was visiting, went out to get something to eat. When they returned, at approximately 1:00 a.m. on September 21, 2000, they were shot to death with a high-powered rifle. Witnesses saw a man dressed in black trotting away from the scene. Police found twenty-seven shell casings at the scene. Walton was shot nine or ten times; Humphreys, eight.

> On the night of the murders, Martinez called Casey Ashford ("Ashford"), a long-time friend, several times. Martinez drove to the farm where Ashford was staying to deliver a black canvas bag for Ashford to keep. Ashford

4

looked in the bag and saw the rifle later determined to be the murder weapon, among other items. He buried the bag, but later disclosed its location to police. When police opened the bag, they found the rifle, a bag of fertilizer, a fuse, dark clothing, combat boots, gloves, a pipe bomb, a ski mask, a double-edged knife, a bulletproof vest, and ammunition.

At trial, Martinez tried to pin the blame for the murders on Ashford. His mother and brother testified that he had been at home on the night of the murders. He also showed that Ashford lied several times when dealing with the police and that, prior to the murders, Ashford had had access to the murder weapon.

Martinez v. Dretke, 2005 WL 1383350, *2 (N.D. Tex. June 8, 2005)

The district court also summarized the evidence introduced during the punishment phase of trial:

At the punishment phase of the trial, the State introduced items that had been kept by Martinez in a storage facility. They included bomb-making components, over 3000 rounds of ammunition, other weapons, including two pistols, several illegal knives, illegally modified shotguns, and several rifles. Also introduced were four books bearing the notation "completed reading by James Martinez": Be Your Own Undertaker: How to Dispose of a Dead Body; Master's Death Touch: Unarmed Killing Techniques; 21 Techniques of Silent Killing; and Dragon's Touch: Weaknesses of the Human Anatomy. The State also offered victim-impact testimony by Humphreys' father, mother, and stepmother, and Walton's mother.

Martinez called a number of people to testify that they had not known him to be a violent person and did not believe he would commit any more crimes in the future. None of them seemed to know Martinez very well, except his mother and brother, and most of them did not know (or admit that they knew) about his extensive collection of weapons and the books Martinez had read. Martinez also presented testimony of a former custodian of records for the Texas Department of Criminal

5

Justice, who testified generally about daily prison routines and classification of prisoners. Martinez also presented the testimony of Dr. Mark Cunningham ("Cunningham"), a clinical and forensic psychologist who testified about recidivism rates for capital murderers with Martinez's characteristics. Cunningham testified that there was only a small chance that a person like Martinez would commit future acts of violence in prison. In rebuttal, the state offered the testimony of an investigator with the prison prosecution unit, who testified about violence within the prison population.

Id.

## II.

Because Martinez initiated his federal habeas proceedings after April 24, 1996, his petition and the instant appeal are governed by AEDPA. Slack v. McDaniel, 529 U.S. 473, 478 (2000). In order to appeal the denial of his petition by the district court, Martinez "must first seek and obtain a COA" as a jurisdictional prerequisite. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). A COA will only issue if Martinez makes a substantial showing of the denial of a constitutional right, which requires a showing that "reasonable jurists could debate whether" the court below should have resolved the claims in a different manner or that this court should encourage Martinez to further litigate his claims in federal court. Id. at 336 (quoting Slack, 529 U.S. at 483-84); Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000). The COA determination "requires

6

an overview of the claims in the habeas petition and a general assessment of their merits" but not "full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

This court has emphasized that in making the COA determination, the court must be cognizant of the deferential standard of review the district court applies under AEDPA. Miniel v. Cockrell, 339 F.3d 331, 336 (5th Cir. 2003), cert. denied, 540 U.S. 1179 (2004). The district court defers to a state court's adjudication of a petitioner's claims on the merits unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. at 336-37 (quoting 28 U.S.C. § 2254(d)). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. Id. at 337 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

7

A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable. Id. (citing Williams, 529 U.S. at 407-08).

Additionally, AEDPA provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." Valdez v. Cockrell, 274 F.3d 941, 948 n.11 (5th Cir. 2001). We now turn to a consideration of Martinez's specific claims.

III.

A.

Martinez first alleges in his federal habeas petition that he was denied the right to effective assistance of counsel because his trial counsel failed to argue that Casey Ashford was an accomplice witness. Martinez also argues that trial counsel never informed him of the implications such a theory might have for his case.

Counsels' primary defense theory in the liability phase of the trial was that Ashford had acted alone and that Martinez was not involved in the murders. For obvious reasons, trial counsel did not conduct voir dire on the accomplice witness theory, nor request a jury charge on accomplice witness testimony.

In order to prevail on an ineffective assistance of counsel ground, Martinez must show (1) that his counsels' performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsels' unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). Both prongs of the Strickland test must be met to demonstrate ineffective assistance. Id. at 697. Judicial scrutiny

9

of this type of claim must be highly deferential and Martinez must overcome a strong presumption that his counsels' conduct fell within the wide range of reasonable professional assistance. Id. at 689.

As a threshold matter, the district court observed that the state trial court made extensive findings of fact and conclusions of law related to the performance of Martinez's counsel, finding that trial counsel engaged in sound strategy. Those findings were adopted by the Court of Criminal Appeals in the habeas proceedings. Martinez makes no attempt, either in his federal petition or in the instant application for COA, to show that those findings are not entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Martinez also makes no attempt to show that the state court's application of Strickland was "contrary to, or involved an unreasonable application" of that precedent.

Moreover, the district court independently concluded that the record supports the conclusion that Martinez's counsel employed sound trial strategy. Also, according to Martinez's trial counsel they raised with Martinez the possibility of arguing that he and Ashford had acted together, and Martinez declined to agree with pursuing this strategy. The record fully

10

supports the district court's conclusion that counsel followed a conscious and informed decision on trial tactics. Such a decision cannot be a basis for constitutionally ineffective assistance of counsel unless it is so ill-chosen that it permeates the entire trial with obvious unfairness. Crane v. Johnson, 178 F.3d 309, 314 (5th Cir.1999). Martinez fails to make any such showing. Because reasonable jurists could not debate whether the district court's conclusion was correct, we deny COA on this issue.

B.

Martinez next argues that his trial counsel rendered ineffective assistance during the punishment phase. He complains that his attorneys presented the testimony of two witnesses, a corrections expert and a psychologist, on the issue of future dangerousness which was damaging to his defense. The district court agreed with the state habeas court and concluded that counsel employed sound trial strategy consistent with Strickland in deciding to call these witnesses. Again, Martinez makes no effort to demonstrate that the factual findings of the state court are not entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1), or that the state court's application of

11

*Strickland* was "contrary to, or involved an unreasonable application" of that precedent.

The State's brief exhaustively discusses trial counsels' decision to elicit the testimony of these two witnesses. Counsel ultimately determined that the best punishment phase strategy would be to present evidence tending to show that Martinez was most likely going to be a "good" and "nonviolent" inmate in prison. The record makes clear that trial counsel carefully and deliberately consulted with several experts and attorneys who had presented similar testimony in death penalty trials before arriving at the strategic decision to follow this path. Moreover, although parts of the witnesses' testimony was negative, in that both witnesses acknowledged that there were opportunities for violence in prison, neither affirmatively testified that Martinez himself posed a threat of future dangerousness. Even disregarding Martinez's failure to address the relevant standard of review in evaluating counsels' strategic decision, Martinez has failed to demonstrate either that his trial counsel was deficient or that he was prejudiced, both of which are required under *Strickland*. Because reasonable jurists could not debate whether the district court should have reached a different conclusion, we deny COA on this issue.

12

C.

Martinez next argues that the state trial court violated his Eighth and Fourteenth Amendment rights by issuing a jury instruction that did not perfectly track the mitigation special issue, and that his trial counsel rendered ineffective assistance by failing to object to the instruction. Martinez complains that the trial court's instruction did not track the special issue on mitigation the trial court required the jury to answer. The Texas statute calls for a response to a special issue that asks "[w]hether ... there is sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than death sentence be imposed." In explaining the special issues, the trial judge instructed the jury to "consider all evidence ... that *militates for* or mitigates against imposition of the death penalty." (emphasis added). As we understand the argument, Martinez objects to the language in the charge, designed to explain the mitigation special issue, that refers to evidence that "militates for" the death penalty."

Martinez admits in his application for COA that these claims were neither raised on direct appeal nor in his first state writ application. Instead, these claims were presented for the first time in the late supplement to his first state habeas

13

application, which the Court of Criminal Appeals found to be procedurally barred and dismissed as a subsequent writ. Martinez made no effort in his federal habeas petition to overcome the procedural bar, and therefore the district court denied relief based on the procedural default.

Procedural default of a petitioner's federal habeas claim occurs where the last state court to consider a claim "clearly and expressly" dismisses it based upon a state procedural rule that provides an adequate basis for denial of relief, independent of the merits. Coleman v. Thompson, 501 U.S. 722, 729 (1989); Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001); Nobles v. Johnson, 127 F.3d 409, 422 (5th Cir. 1997). The "independent" and "adequate" requirements are satisfied where the court clearly indicates its dismissal of a particular claim rests upon a state ground that bars relief, and that bar is strictly and regularly followed by the state courts. Finley, 243 F.3d at 218.

In this case, the Texas Court of Criminal Appeals expressly based its dismissal of Martinez's new claims raised in his subsequent state writ application on an independent procedural bar. Martinez, therefore, may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice that is attributable to the default. Murray v. Carrier, 477 U.S.

14

478, 485 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-88 (1977). However, Martinez has made virtually no effort to show cause for his failure to bring these claims in his first state writ petition.  Instead he asserts, without elaboration or citation to the record, that the default was "due to the fault of appointed state habeas corpus counsel."  However, error by counsel committed in a post-conviction proceeding, where there is no constitutional right to counsel, cannot constitute cause.  <u>Jones v. Johnson</u>, 171 F.3d 270, 276-77 (5th Cir. 1999); <u>Irving v. Hargett</u>, 59 F.3d 23, 26 (5th Cir. 1995).  Martinez has completely failed to offer any cause sufficient to meet the requirements to overcome the procedural bar on these claims, and no reasonable jurists could debate whether the district court should have reached a different conclusion.  We therefore deny COA on this issue.[4]

### D.

Martinez next argues, based on a strained reading of <u>Ring v. Arizona</u>, 536 U.S. 583 (2002) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), that the State must bear the burden of proving beyond

---

[4] On the merits, we also see no error in the instruction that approaches constitutional error.  The instruction attempts to give the jury a balanced explanation of their duty to consider all the relevant evidence.

15

a reasonable doubt a negative answer to the mitigation special issue. Martinez's theory is incorrect. Apprendi requires that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. In Ring, the Supreme Court applied Apprendi to the Arizona death penalty scheme, and concluded that to the extent the sentencing scheme allowed "a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for the imposition of the death penalty," it was unconstitutional. Ring, 536 U.S. at 609.

However, the same requirements are not imposed on the consideration of mitigating facts. The Supreme Court specifically concluded in Walton v. Arizona that the burden of proof may lie on a defendant to establish by a preponderance of the evidence the existence of mitigating circumstances sufficiently substantial to call for leniency. 497 U.S. 639, 649-51 (1990) ("So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the

16

burden of proving mitigating circumstances sufficiently substantial to call for leniency."), overruled in part on other grounds, Ring v. Arizona, 536 U.S. 548 (2002).

Martinez's theory that the State must prove beyond a reasonable doubt a negative answer to the mitigation special issue has been clearly rejected by both the Supreme Court and the Fifth Circuit. We therefore deny COA on this issue.

### E.

Finally, Martinez argues that the punishment phase jury instruction on the special issue of future dangerousness fails to give the jury sufficient guidance in understanding the term "probability."[5] However, as the district court noted, Martinez failed to raise these claims in either his direct appeal or his state habeas application, so that they are unexhausted and procedurally barred. Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001). As with the barred claims discussed above, Martinez makes no effort to overcome this procedural bar by showing any cause for his failure to bring these claims before the state courts. Moreover, even if Martinez were able to overcome the

---

[5] During the sentencing phase of Martinez's trial, the jury was charged with answering the following special issue:
> Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

TEX. CODE CRIM. PROC. ART. 37.071 § 2(b)(1).

17

procedural bar, his theory is clearly incorrect.  As the district court found, it is well established that the Texas punishment issues are not impermissibly vague as they have a "common-sense core of meaning."  Pulley v. Harris, 465 U.S. 37, 50 n. 10 (1984); Milton v. Procunier, 744 F.2d 1091, 1095-96 (5th Cir. 1984).  Reasonable jurists could not debate either the application of the procedural bar nor the conclusion that Martinez's substantive argument is flawed.  We therefore deny COA on this issue.

IV.

The claims asserted in Martinez's request for COA are wholly without merit or clearly subject to procedural bar.  Because we conclude that the district court's denial of relief is not debatable by jurists of reason, the petition for certificate of appealability is denied.

PETITION DENIED.

18