IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 2, 2008

Charles R. Fulbruge III
Clerk

No. 08-70001

DERRICK LAMONE JOHNSON

Petitioner, Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent, Appellee

Appeal from the United States District Court
For the Northern District of Texas
Dallas Division
(3:03-CV-2606)

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Petitioner Derrick Lamone Johnson ("Petitioner") seeks a certificate of appealability ("COA") and permission to appeal the district court's denial of habeas corpus relief under 28 U.S.C. § 2254. Petitioner asserts that the district court (1) erred in denying his claim that the trial court's failure to define "society" as including "prison" in connection with the special instruction on

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

"continuing threat to society" violated his due process rights under the Fifth and Fourteenth Amendments; (2) erred in concluding that the trial court's refusal to allow the jury to consider Petitioner's eligibility for parole in considering whether he would be a continuing threat to society violated his Fifth and Fourteenth Amendment rights; and (3) erred in concluding that the cumulative effect of the violations asserted above did not violate his Fifth and Fourteenth Amendment rights. We conclude that reasonable jurists would not disagree with the district court's assessment of Petitioner's claims and we, therefore, deny Petitioner's request for a COA.

I.

Petitioner was convicted of capital murder in the 282nd District Court, Dallas County, Texas, and sentenced to death by lethal injection. His conviction and sentence were affirmed on direct appeal by the Texas Court of Criminal Appeals. Petitioner's application for state post-conviction relief was denied. Petitioner thereafter filed an application for a writ of habeas corpus in the federal district court which was also denied. Petitioner now seeks a certificate of appealability from this court.

The facts produced by the State were summarized by the Texas Court of Criminal Appeals. Based on that summary, the circumstances surrounding this crime are as follows: Petitioner and Marcus Maxwell kidnaped a young woman, LaTausha Curry, in Dallas, Texas, on January 21, 1999. She was never again seen alive. In a written confession and a verbal statement, Petitioner admitted that, with his accomplice, he had sexually assaulted and killed Curry, and he accurately told the police where the as-yet-undiscovered body could be found. Petitioner's fingerprints were matched to fingerprints found in Curry's car, and his DNA to seminal fluid found on Curry's pants.

Curry's assault and murder occurred during an ongoing crime spree. At around midnight on January 22, shortly after murdering Curry, Petitioner and his accomplice robbed Stella Wilson at gunpoint at a gas station. Within two hours after that robbery, the men, driving Curry's vehicle, chased and collided with Tanya Robinson while she was driving home from work. Robinson was able to call the police, who joined the chase but were unable to apprehend the men at that point.

Petitioner was later arrested and charged with the capital murder of Curry, on evidence gathered from the car and eyewitness accounts of some of that night's events. He was found guilty. During the sentencing phase, the State presented evidence of Petitioner's prior crimes, including the abduction, sexual assault, and attempted strangulation of Renee Williams by Petitioner and an accomplice. The jury sentenced Petitioner to death by lethal injection.

## II.

Petitioner must obtain a COA before he can appeal the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'"[1] According to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a COA may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."[2] This standard requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

---

[1] Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)(1)).

[2] 28 U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 483 (2000).

manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[3] The Supreme Court has explained:

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.[4]

In sum, Petitioner need not show that the appeal will ultimately succeed.[5] Instead, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"[6] "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination."[7] With regard to claims adjudicated on the merits in state court,

> "[o]ur role is to determine not whether [petitioner] is entitled to relief, but whether the district court's conclusion that the state court adjudication was not contrary to or an unreasonable application of clearly established federal law is one about which jurists of reason could disagree or as to which jurists could conclude that the issues

---

[3] Slack, 529 U.S. at 484 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)), quoted in Miller-El, 537 U.S. at 335. See also Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000).

[4] Miller-El, 537 U.S. at 336–37.

[5] Id. at 337; see also Slack, 529 U.S. at 484.

[6] Id. at 338 (quoting Slack, 529 U.S. at 484).

[7] ShisInday v. Quarterman, 511 F.3d 514, 520 (5th Cir. 2007) (citing Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir. 1997)).

presented are adequate to deserve encouragement to proceed further."[8]

### III.

Petitioner first argues that the trial court's failure to define "society" as including "prison" violated his due process rights under the Fifth and Fourteenth Amendments. Texas Code of Criminal Procedure article 37.071(b)(1) requires that the following issue be submitted to the jury on conclusion of the presentation of evidence: "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Special Issue No. 1, which the jury must answer, reads as follows: "Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Derrick Lamone Johnson, would commit criminal acts of violence that would constitute a continuing threat to society?" Petitioner acknowledges that courts have refused to define the term "society," reasoning that the term has a common understanding and that such explanation would be redundant.

Before the trial court, state appellate court and the federal district court Petitioner argued that the term "continuing threat to society" was vague, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments. Petitioner argued to the district court that the trial court's failure to define certain critical terms, including "continuing threat to society," thereby unconstitutionally failed to narrow the class of persons eligible for the death penalty. The argument made before the state courts and the federal district court regarding this phrase, however, did not include the specific argument he makes to us that "continuing threat to society" should include "prison."

---

[8] Haynes v. Quarterman, 526 F.3d 189, 193 (5th Cir. 2008) (quoting Jackson v. Dretke, 450 F.3d 614, 616 (5th Cir. 2006)) (alterations in original).

The first time that Petitioner made his argument that "society" should have been defined to include "prison" was in his Motion for New Trial in the federal district court. Motions for a new trial, however, "'cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.'" Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986) (citations omitted)). In the state courts, and in his pre-judgment arguments to the district court, Petitioner argued generally that "society" was vague and ambiguous. He cannot now change his argument in post-judgment motions and on appeal. Because he failed to bring his argument in a timely manner, a writ of habeas corpus cannot be issued on it.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that — (A) the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1). " To exhaust his state remedies, a habeas petitioner must fairly present the substance of his claim to the state courts. . . . . The exhaustion requirement is not met if the petitioner presents new legal theories or factual claims in his federal habeas petition." Finley v. Johnson, 243 F.3d 215, 219 (5th Cir. 2001) (citing Picard v. Connor, 404 U.S. 270, 275–76 (1971); Anderson v. Harless, 459 U.S. 4, 6-7 (1982)). Consequently, Johnson's failure to raise this claim in the Texas courts means that he has failed to exhaust state court remedies as required by section 2254(b). Id. See also Jones v. Johnson, 171 F.3d 270, 276–77 (5th Cir. 1999); Nobles v. Johnson, 127 F.3d 409, 419–22 (5th Cir. 1997).

Furthermore, Johnson is now precluded from returning to the Texas courts by the Texas Code of Criminal Procedure, which prohibits a successive state habeas application unless, e.g., "the current claims and issues have not been and could not have been presented previously in a timely initial application or in a

previously considered application . . . because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application." TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a)(1). See, e.g., Nobles, 127 F.3d at 422 (discussing article 11.071, § 5). "[T]his bar represents an additional adequate state procedural ground which bars federal review of his claim. If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." Finley, 243 F.3d at 220 (citations omitted). Because the argument that "society" should include "prison" is different from the vagueness argument and was raised for the first time in Petitioner's Motion for New Trial, we are precluded from considering it. Therefore, Petitioner's "society" argument does not warrant the issuance of a COA.[9]

## IV.

Petitioner next argues that the trial court's refusal to allow the jury to consider his eligibility for parole violated his due process rights under the Fifth and Fourteenth Amendments. He complained that the sentencing jury was not allowed to fairly consider his future dangerousness in light of the fact that Texas law required him to serve a mandatory forty years before being eligible for parole.[10] The trial court instructed the jury as follows:

---

[9] Alternatively, it is also clear that jurists of reason would not disagree with the district court's conclusion that "society" or "continuing threat to society" need not be defined. As the district court noted and amply supported with citations, "[t]his Circuit has consistently approved the use of the term[] . . . 'continuing threat to society' without definition over objections that they are unconstitutionally vague as used in these sentencing instructions." Johnson v. Quarterman, 2007 WL 2735638, *26 (N.D. Tex. 2007); see, e.g., Leal v. Dretke, 428 F.3d 543, 553 (5th Cir. 2005). The district court correctly concluded that it was bound on this issue by Circuit precedent.

[10] It should be noted that at the time of Petitioner's trial, Texas law required any person serving a life sentence to serve at least 40 years before becoming eligible for parole.

Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without consideration of any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those law [sic] will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted. You are further instructed that you cannot consider how long the defendant might be required to serve a sentence that is imposed. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and are no concern of yours.[11]

Petitioner alleges that the italicized portion of the instruction misled the jury into thinking that he could be released sooner than the law permits. He argues that the jury should have been instructed specifically on his parole eligibility after forty years.

The district court quoted the following rule from Simmons v. South Carolina:

[I]f the State rests its case for imposing the death penalty at least in part on the premise that the defendant will be dangerous in the future, the fact that the alternative sentence to death is life without parole will necessarily undercut the State's argument regarding the threat the defendant poses to society.[12]

Therefore, as the district court concluded, "Simmons requires that the jury be instructed about the defendant's parole eligibility 'only where state law provides

---

Johnson, 2007 WL 2735638 at *11. Under current Texas law, which is inapplicable here, life without parole is now the alternative sentence to a death sentence. See TEX. CODE CRIM. PROC. ANN. art. 37.071.

[11] Johnson, 2007 WL 2735638 at *6 (emphasis in original).

[12] Id at *11 (N.D. Tex. 2007) (quoting Simmons, 512 U.S. 154, 168-69 (1994)) (emphasis added).

for life imprisonment without possibility of parole as an alternative to the death penalty.'"[13] The Simmons rule just described does not apply to this case because under Texas law Petitioner would have been eligible for parole.[14] Furthermore, following this Circuit's precedent, the district court explained that "any extension of Simmons would be barred under the non-retroactivity doctrine announced in Teague [v. Lane, 489 U.S. 288 (1989)]."[15]

Petitioner argues that this Circuit's cases holding that Simmons is inapplicable should not be applied to his case because the wording of the jury instruction cautioned the jury to not consider the forty year minimum, and so in this context, the jury instruction was misleading. But this same issue was recently addressed by this Court in Turner v. Quarterman, 481 F.3d 292 (5th Cir. 2007). Turner argued that "where the state court did inform the jury that [he] would not be eligible for parole for forty years, it was a violation of due process and Simmons for the court then to inform the jury not to consider parole eligibility."[16] We concluded that Simmons was inapplicable and that in deciding future dangerousness, parole eligibility is irrelevant because the jury is entitled to consider that the inmate still poses a danger to other inmates.[17] The argument Petitioner makes is the same as the one we rejected in Turner. We, therefore, deny a COA on this claim.

---

[13] Id. (quoting Simmons, 512 U.S. at 156, and citing Ramdass v. Angelone, 530 U.S. 156, 166 (2000); Woods v. Cockrell, 307 F.3d 353, 361 (5th Cir. 2002)) (emphasis added).

[14] Id. at *11-12 (citing Miller v. Johnson, 200 F.3d 274, 290–91 (5th Cir. 2000) ("[B]ecause Miller would have been eligible for parole under Texas law if sentenced to life, we find his reliance on Simmons 'unavailing.'")).

[15] Id. at *12 (citing Woods, 307 F.3d at 361-62; Coleman v. Quarterman, 456 F.3d 537, 544-45 (5th Cir.2006); Hughes v. Dretke, 412 F.3d 582, 591-92 (5th Cir.2005)).

[16] 481 F.3d at 298.

[17] Id.

V.

Finally, Petitioner requests a COA on his claim that the cumulative affect of the above violations denied his due process.  We agree with the district court that "[t]here are no errors of a constitutional dimension properly before the court."[18]  In this Circuit, "where individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'"[19]  Jurists of reason would not disagree with this conclusion that there was no error.  We deny a COA on this claim.

CONCLUSION

For the reasons stated above, Johnson's application for a COA is denied.  COA DENIED.

---

[18] Johnson, 2007 WL 2735638 at *31.

[19] Turner, 481 F.3d at 301 (quoting Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993)).