# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 5, 2023

Lyle W. Cayce
Clerk

No. 20-70022

GARLAND BERNELL HARPER,

*Petitioner—Appellant*,

*versus*

BOBBY LUMPKIN, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-762

ON PETITION FOR REHEARING AND REHEARING EN BANC

Before WILLETT, HO, and DUNCAN, *Circuit Judges*.

PER CURIAM:

The petition for panel rehearing is DENIED. Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc (FED. R. APP. P. 35 and 5TH CIR. R. 35), the petition for rehearing en banc is DENIED. The opinion is WITHDRAWN, and the following opinion is SUBSTITUTED:

A Texas jury convicted Garland Bernell Harper of murder and sentenced him to death. After his direct appeal and habeas petitions were

No. 20-70022

both denied in state court, Harper raised 31 claims in a federal habeas petition. The district court denied all his claims and also denied a certificate of appealability (COA). Harper asks us to issue a COA on eight of those claims which he presents as posing five distinct legal issues. We DENY Harper a COA on all of his claims for the reasons explained below.

I

Harper was convicted of murdering his girlfriend, Triska Rose, and her two daughters: Mya, aged seven, and Briana, aged sixteen. The jury sentenced Harper to death in a separate punishment phase.

Harper filed a direct appeal raising eight claims. The Texas Court of Criminal Appeals (TCCA) found no error and affirmed Harper's conviction. Harper later filed an application for a writ of habeas corpus in state court. The trial court drafted proposed findings of fact and conclusions of law, recommending that Harper's application be denied. The TCCA adopted these findings of fact and conclusions of law with a few minor adjustments and denied Harper's application. Harper then filed a petition for a writ of habeas corpus in federal court, which was 291 pages long and contained 31 claims.

The district court denied each of Harper's claims in a sixteen-page opinion and did not certify any issue for review on appeal. Harper asks us to issue a certificate of appealability on eight of the thirty-one claims. Some claims overlap and, as a result, Harper presents them as five issues: (1) a Confrontation Clause claim (claim 2 of Harper's habeas petition); (2) a *Strickland* claim premised on ineffective assistance of counsel during voir dire (claim 11); (3) a *Batson* claim (claims 12, 13, and 28); (4) a second *Strickland* claim premised on counsel's failure to argue that Harper's mental illness rendered his confession involuntary (claims 15 and 16); and (5) a third

*Strickland* claim premised on counsel's failure to object on reliability grounds to the government's expert on future dangerousness, Dr. Moeller (claim 7).

## II

We may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has decided a claim on the merits, this showing requires the applicant to demonstrate that jurists of reason "could disagree with the district court's resolution of [the] constitutional claims" or "could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). On the other hand, "[f]or claims denied on procedural grounds," the applicant must show that jurists of reason could debate both "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Nelson v. Davis*, 952 F.3d 651, 658 (5th Cir. 2020) (quoting *Segundo v. Davis*, 831 F.3d 345, 350 (5th Cir. 2016)). In a capital case, "any doubts as to whether a COA should issue must be resolved in the petitioner's favor." *Id.* (internal quotation marks omitted).

Where, as here, "a state court has reviewed a petitioner's claim on the merits, our review is constrained by the deferential standards of review found in the Antiterrorism and Effective Death Penalty Act ('AEDPA')." *Id.* (citing 28 U.S.C. § 2254). "Under these circumstances, we may not issue a COA unless reasonable jurists could debate that the state court's decision was either 'contrary to, or involved an unreasonable application of, clearly established Federal law,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (internal citations omitted) (quoting 28 U.S.C. § 2254(d)(1)–(2)). "For claims that are not adjudicated on the merits in the state court, however, we

do not apply the deferential scheme laid out in § 2254(d) and instead apply a de novo standard of review." *Id.* (internal quotation marks omitted).

A

Harper's first issue-presented is that the district court erred by failing to consider his Confrontation Clause claim (whether on the merits or as part of a separate ineffective-assistance argument). The district court cited procedural grounds for declining to consider this issue. A COA will issue, then, only if jurists of reason (1) "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "would find it debatable whether the district court was correct in its procedural ruling." *Segundo*, 831 F.3d at 350 (quoting *Slack*, 529 U.S. at 484). We find the second element dispositive and therefore do not address the first.

The Confrontation Clause claim received only a single footnote in Harper's state and federal habeas petitions. That fact places the district court's decision beyond reasonable debate, for two independent reasons.

First, it is beyond debate that Harper failed to exhaust this claim in state court. Instead, he presented the claim to the state court in a single footnote that he nested deep in the body of a 232-page petition that separately presented 24 distinct claims. "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019) (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004)). A fair opportunity requires that "all the facts necessary to support the federal claim were before the state courts" and "the habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277–78 (1971)). "Arguments raised in a perfunctory manner, such as in a footnote, are waived" because they do not give the state

No. 20-70022

court a fair opportunity to consider the claim. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) (quoting *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)).

Second, it is also beyond debate that Harper also failed to exhaust this claim in the district court. Federal habeas petitions must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Rule 2(c), Rules Governing § 2254 Cases). "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)). For the same reasons that Harper did not fairly present this issue to the state courts, it is beyond debate that Harper did not fairly present his Confrontation Clause claim to the district court. A single conclusory footnote in a 291-page federal habeas petition is not enough to put a district court on notice of a claim.

Harper argues that it doesn't matter that he put his Confrontation Clause claim in a footnote because that footnote cited a transcript in which his trial counsel made the essence of a Confrontation Clause objection. Harper bases this argument on *Dye v. Hofbauer*, 546 U.S. 1 (2005) (per curiam). That case and its progeny hold that a claim properly presented in an earlier proceeding can be incorporated by reference into a federal habeas petition. *Ramey v. Davis*, 942 F.3d 241, 248–49 (5th Cir. 2019) (citing *Dye*, 546 U.S. at 4). But *Dye* and *Ramey* involved claims that were properly raised in prior *briefs*—not exhibits. *See id.* (claim properly raised in direct appeal brief and state habeas petition, but insufficiently briefed in federal habeas petition, was incorporated by reference); *Dye*, 546 U.S. at 3–4 (claim properly raised in a state habeas brief was incorporated by reference in federal habeas petition).

No. 20-70022

But Harper's footnote did not incorporate *any* claim or argument by reference. Instead, Harper cited the transcript only to support a factual assertion: "The medical examiner who conducted the autopsy was available to testify two days later, but defense counsel declined to call him to the stand." That factual assertion may be a predicate for an argument that Harper might have made, but it is not an argument by itself. It is beyond debate that claims cannot be hidden inside of voluminous exhibits cited in footnotes hidden inside of habeas petitions that are hundreds of pages long. *See* RULES GOVERNING § 2254 CASES 2 advisory committee's note to Rule 2(c) (noting that Rule 2 does not require judges to grope through "two thousand pages of irrational, prolix and redundant pleadings" (quoting *Passic v. Michigan*, 98 F. Supp. 1015, 1016 (E.D. Mich. 1951)); *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990) ("[I]t would be unwise to saddle district judges with the burden of reading through voluminous records and transcripts in every case." (quoting *Williams v. Kullman*, 722 F.2d 1048, 1051 (2d Cir. 1983)). *Dye* didn't turn habeas petitions into matryoshka dolls.

After the district court dismissed his habeas petition, Harper filed a Rule 59(e) motion to alter or amend the judgment, arguing that the district court had improperly overlooked his claim. The district court denied this motion, finding that the argument had not been fairly placed before the court. Harper challenges that denial, and he also argues that the district court should have construed his reply brief, which did raise a Confrontation Clause argument, as a Rule 15 motion to amend his habeas petition. We need not address these arguments. Even if they are sound, it is beyond debate that Harper's claim would still be unexhausted for failing to fairly present the Confrontation Clause claim to the state habeas court.

No. 20-70022

B

Harper's second claim is that his counsel's performance was ineffective for failing to strike or challenge for cause three jurors—Dowlin, Basey-Higgs, and Williams. The state habeas court adjudicated this claim on the merits. Accordingly, "we may not issue a COA unless reasonable jurists could debate that the state court's decision was . . . 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Nelson*, 952 F.3d at 658 (quoting 28 U.S.C. § 2254(d)(1)).

Harper's ineffective-assistance claim requires him to show "(1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense." *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984)). "Regarding the first prong, to establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* (alteration adopted) (internal quotation marks omitted)). "Regarding the second prong, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted).

On the first prong, Harper argues (1) that the death penalty cannot be mandatory, *see Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *Sumner v. Shuman*, 483 U.S. 66, 75–78 (1987); *Roberts v. Louisiana*, 428 U.S. 325, 336 (1976) (plurality); *Woodson v. North Carolina*, 428 U.S. 280, 301 (1976) (plurality), and (2) that jurors must be willing and able to give effect to mitigating evidence when deciding whether to approve the death sentence, *Morgan v. Illinois*, 504 U.S. 719, 733–35 (1992); *Penry v. Lynaugh*, 492 U.S.

302, 327–28 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 113–15 (1982). But the state court rejected these arguments, reasoning that "none of the cited jurors indicated that they would automatically vote for the death penalty in every case[,] and all expressed the opinion that they could answer the special issues in such a way that either life or death would result based on the evidence and the law." Accordingly, the state court concluded that Harper's counsel was not ineffective for failing to use a peremptory strike against these jurors. Harper has not identified any clearly established federal law that would allow reasonable jurists to debate this conclusion.

Nor has Harper even argued that reasonable jurists could debate *Strickland*'s second prong. No COA will issue on this claim.

C

Harper's third claim is that the prosecutor discriminated against prospective black jurors (Harper's "*Batson*" claim). The Government argues that Harper's *Batson* claim has evolved considerably since it was first presented on direct appeal, and as a result most of it is procedurally defaulted. We begin by considering whether jurists of reason could debate whether any component of this claim has survived procedural default. *See Nelson*, 952 F.3d at 658. For those components whose procedural viability is at least debatable, we conclude that it is nonetheless beyond debate that the state habeas court's merits decision was neither "contrary to . . . clearly established Federal law" nor "based on an unreasonable determination of the facts." *Nelson*, 952 F.3d at 658 (quotations omitted). We will not issue a COA on this claim.

1

Federal habeas review of a claim is procedurally barred if the highest available state court "dismissed the claim on a state-law procedural ground instead of deciding it on the merits." *Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)). But to qualify,

that state-law procedural ground must be both an "independent and adequate ground for dismissal." *Id.* (quoting *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997)). Independent means "independent of the merits of the federal claim." *Id.* at 821 (quoting *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001)). Adequate means that the rule is "strictly or regularly applied evenhandedly to the vast majority of similar claims." *Id.* (quoting *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995)).

The TCCA dismissed Harper's *Batson* claim in part under its procedural rule that arguments that could have been raised on direct appeal but were not are procedurally defaulted. *See Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004) (en banc) ("It is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.'" (quoting *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (en banc))). We have previously recognized this rule as an adequate state ground that bars federal habeas relief, *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005) (citing *Ex parte Gardner*, 959 S.W.2d at 199), and Harper does not argue that we should reconsider that decision. So, the first question we must answer is whether any of Harper's *Batson* arguments have at least debatably survived procedural default.[1]

The merits of Harper's *Batson* claim take two forms. First, he says that the prosecution's strikes followed a pattern that gave rise to an inference of discrimination. Second, he says that each of the prosecution's five stated reasons for using a peremptory strike against juror Banks were pretextual.

---

[1] Petitioners can overcome procedural default if they demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Johnson*, 255 F.3d 229, 239 (5th Cir. 2001) (discussing *Coleman*). However, Harper does not argue this point, and we do not see any arguments that could debatably allow for excusing procedural default.

No. 20-70022

We start with Harper's "pattern of strikes" argument. Harper did make a version of this argument on direct appeal. But he didn't present any evidence of the racial makeup of the jury pool as a whole. The TCCA held that the juror questionnaires, which would have provided evidence of the racial makeup of the jury pool, were essential to substantiate Harper's claim that there was a racial disparity between the venire and the seated jury. In other words, by failing to introduce the juror questionnaires, Harper was effectively asking the TCCA to take his word that the seated jurors were more likely to be white than the venire was. Because the record lacked evidence of the racial makeup of the accepted members, Harper could not substantiate this claim. As a result, the TCCA dismissed his claim on direct appeal. When Harper tried to offer that evidence in his state habeas litigation, the TCCA held that Texas law barred him from relying on arguments or evidence that he could have but failed to raise on direct appeal.

Harper does not even argue that the TCCA misapplied Texas law by "dismiss[ing] the claim on a state-law procedural ground instead of deciding it on the merits." *Rocha*, 626 F.3d at 820. Therefore, it is beyond debate that Harper has procedurally defaulted the "juror questionnaire" aspects of his "pattern of strikes" argument.[2] Harper has, however, exhausted the more limited "pattern of strikes" argument that he presented on direct appeal.

Next, we consider Harper's argument that the State's five proffered reasons for striking juror Banks were pretextual. We agree that he exhausted his objections to the State's first and second proffered reasons.

---

[2] Because it is beyond debate that Texas's abuse-of-the-writ doctrine prevents Harper from relying on evidence that was not in the record on direct appeal, we need not consider the Government's alternative argument that *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011), compels the same result.

No. 20-70022

The State's third proffered reason for striking Banks was her statement that "everybody is capable of rehabilitation." On direct appeal, Harper argued that this reason was pretextual because jurors Cotton and Basey also expressed that the chance for rehabilitation was the most important factor to them but were seated anyways. However, in his habeas petition, Harper relied on a comparison to five additional jurors—jurors Price, Moore, Pavlovich, Summer, and Vaughan—who, like Cotton, Basey, and Banks, expressed that rehabilitation is the most important goal of criminal punishment. Because Harper did not rely on a comparison to these additional jurors on direct appeal, it is beyond debate that he cannot do so now. However, Harper can rely on the comparison to the first two jurors.

The State's fourth proffered reason was that Banks failed to answer the question about whether life in prison is more effective than the death penalty. In his direct appeal, Harper's only objection to this proffered reason was that there was no evidence that Banks was being "deceptive, or untruthful, in failing to answer that question." In his two habeas petitions, Harper reshaped his argument, relying on evidence not presented on direct appeal. He now argues that this reason is pretextual, citing evidence that the prosecution failed to strike three other jurors who also failed to answer parts of the questionnaire. Harper did not make this comparative argument on direct appeal, so it is beyond debate that he cannot make it now. Still, he has exhausted the "deception" argument that he made on direct appeal.

Finally, Harper argues that the State's fifth proffered reason—Banks's strong belief in the importance of forgiveness based in part on her background in ministry—was pretextual. But Harper did not make any version of this argument on direct appeal. As a result, jurists of reason could conclude only that this argument is entirely procedurally defaulted.

2

Having sorted through which arguments in support of Harper's *Batson* claim were at least debatably exhausted, we next consider whether reasonable jurists could debate the district court's denial of the non-defaulted *Batson* arguments. We conclude that no debate is possible.

Where, as here, the defendant has made out a prima facie case that race motivated the challenged strikes, and the prosecutor has provided a race-neutral explanation for the strike, the trial court must weigh the evidence and decide whether the prosecutor's explanation is credible or mere pretext for discrimination. *Batson v. Kentucky*, 476 U.S. 79, 96–98, 98 n.21 (1986). Because this question "largely will turn on evaluation of credibility," *id.* at 98 n.21, and the best evidence of credibility is "the demeanor of the attorney who exercises the challenge," *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion), the trial court's decision "is entitled to 'great deference' and 'must be sustained unless it is clearly erroneous,'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (citation omitted) (quoting *Batson*, 476 U.S. at 98 n.21 and *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)). "[T]he federal court's role is to 'determine whether the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary.'" *Hoffman v. Cain*, 752 F.3d 430, 448–49 (5th Cir. 2014) (quoting *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005)).

We start with Harper's pattern of strikes argument. For statistical evidence like this to be relevant, "data concerning the entire jury pool is necessary. The number of strikes used to excuse minority . . . jury pool members is irrelevant on its own." *Medellin v. Dretke*, 371 F.3d 270, 278–79 (5th Cir. 2004) (per curiam). As noted above, Harper cannot use evidence

No. 20-70022

that he did not present on direct appeal.[3] Because he cannot rely on the juror questionnaires, and because his statistical claim fails without that evidence, the district court's dismissal of this argument is not debatable.

Next, we consider Harper's argument that each of the prosecutor's five stated reasons for striking Banks was pretextual.

The prosecutor's first reason was that Banks did not answer questions directly and tended to "ponder," out loud, and at length. Banks was indeed loquacious and noncommittal. At first, she seemed to say that she was categorically opposed to the death penalty, saying: "I mean, I'm pretty settled—I feel like I'm pretty settled on my thoughts concerning the death penalty. I don't like to see people die. [Prosecutor:] Right. [Banks:] Period. I mean, who does?" She then indicated that the death penalty *might* be appropriate for serial killers. When the prosecutor later asked if the death penalty should only be used for serial killers, she responded that "[t]hose are not the only cases" and indicated that the murderer's remorse or chance for rehabilitation were the most important factors to her. Three pages of the transcript are then taken up by Banks's extended discussion of the facts of an unrelated DUI homicide case, and why she felt that 30 years imprisonment was justified because the crash took the lives of five children. Even after dozens of pages of the transcript were taken up discussing the death penalty, Banks still said that she had made only an "initial response," and that if she had another "30 minutes to ponder on the question" she might change her mind on when the death penalty is appropriate. Given these facts, jurists of reason could not debate the trial court's conclusion that "clearly established" federal law supports the state court's decision denying this

---

[3] Even if Harper had presented this evidence, we recently denied *Batson* claims based on similar statistics. *See Sheppard v. Davis*, 967 F.3d 458, 472 (5th Cir. 2020), *cert. denied sub nom. Sheppard v. Lumpkin*, 141 S. Ct. 2677 (2021).

aspect of the *Batson* claim. *Nelson*, 952 F.3d at 658 (internal quotation marks omitted).

The prosecutor's second and third proffered reasons were that Banks was opposed to the death penalty, and that she believed strongly in giving people a chance to rehabilitate themselves in prison. True, Banks later walked back her statement that she was "pretty settled" in her opposition to the death penalty. But even then, she continually insisted on the importance of rehabilitation and tied her distaste for the death penalty to her religious beliefs. There is nothing wrong with expressing a distaste for the death penalty. Nor is it racially discriminatory for a prosecutor to use a peremptory strike because a juror expresses such distaste. As such, there is no room to debate the district court's conclusion that clearly established law supports the state court's decision on this part of Harper's *Batson* claim. *See id.*

Harper fares no better with his argument that the prosecutor's fourth proffered reason was pretextual. In his direct appeal, Harper argued that Banks was not being untruthful or deceptive by failing to respond to one of the items on the questionnaire. But this argument does nothing to demonstrate that the prosecutor's stated reason was pretextual. Both things can be true: Banks could have been fully truthful and forthcoming, and the prosecutor could have been concerned that she failed to respond to one of the most important items on the questionnaire. Therefore, it is beyond debate that the trial court properly treated the state court's rejection of this claim as dispositive and in accord with clearly established federal law. *See id.*

Finally, even if Harper had evidence tending to disprove some of the prosecutor's proffered reasons, that would not open the trial court's actual decision to debate. "[A] *Batson* claim will not succeed where the defendant fails to rebut each of the prosecutor's legitimate reasons." *Sheppard*, 967 F.3d at 472 (citing *Fields v. Thaler*, 588 F.3d 270, 277 (5th Cir. 2009); *Stevens v.*

*Epps*, 618 F.3d 489, 500 (5th Cir. 2010)). Harper failed to rebut the prosecution's fifth stated reason for striking Banks at all. Therefore, the district court's rejection of Harper's *Batson* claim is not debatable.

3

Harper next argues that his counsel on direct appeal rendered ineffective assistance by making an incomplete *Batson* claim. He faults his counsel on direct appeal for conducting only a limited comparative juror analysis, failing to rebut the prosecutor's fifth stated reason for striking Banks at all, and failing to include the questionnaires of the jurors in the record.

An ineffective assistance of appellate counsel claim "requires a showing that (1) counsel's performance was legally deficient, and (2) the deficiency prejudiced the defense." *United States v. Bernard*, 762 F.3d 467, 471 (5th Cir. 2014) (citing *Strickland*, 466 U.S. at 687). "Applying AEDPA deference to *Strickland*'s already deferential standard, we must deny relief if 'there is any reasonable argument that [appellate] counsel satisfied *Strickland*'s deferential standard' despite failing to make the argument [in question]. In other words, we must deny relief 'if there was a reasonable justification for the state court's decision.'" *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (first alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 105, 109 (2011)).

The habeas court conducted an extensive argument-by-argument review of Harper's comparative juror analysis argument. It considered each argument that Harper said should have been raised. It found that each of these arguments was meritless and that, as a result, Harper's appellate counsel was not ineffective for failing to raise them.

But Harper does not take issue with *what* the habeas court concluded. Instead, he takes issue with *how* the habeas court reached that conclusion. He argues that the habeas court improperly relied on the prosecutor's

subsequent affidavit which explained some of the inconsistencies in her proffered reasons for striking Banks. For example, the prosecutor averred that her inaccurate statement that Banks wanted to do away with the death penalty was an "honest mistake based on the prosecutor's impression after Banks repeatedly emphasized her belief in forgiveness and rehabilitation." The habeas court also relied on the prosecutor's testimony that while other jurors mentioned rehabilitation, the prosecutor only struck Banks because those jurors "did not reach the intensity of Banks' belief in rehabilitation and forgiveness." Harper argues that by relying on this "post hoc" reasoning, the habeas court violated *Miller-El II*'s "stand or fall" rule. *See Miller-El v. Dretke*, 545 U.S. 231, 251–52 (2005) (*Miller-El II*).

*Miller-El II*'s "stand or fall" rule means that prosecutors and later reviewing courts cannot accept "either entirely different substituted reasons or post hoc reasons for strikes." *Chamberlin v. Fisher*, 885 F.3d 832, 841 (5th Cir. 2018) (en banc). But *Miller-El II* "does not extend to preventing the prosecution from later supporting its originally proffered reasons with additional record evidence, especially if a defendant is allowed to raise objections to juror selection years after a conviction and to allege newly discovered comparisons to other prospective jurors." *Id.* "Nothing in the 'stand or fall' statement means that the prosecutor would forfeit the opportunity to respond to such contentions." *Id.*

If the prosecution was not able to explain why it did *not* strike certain jurors after the fact, it would have to foresee future *Batson* claims and explain why it was *not* striking each prospective juror during jury selection. *See Chamberlin v. Fisher*, 855 F.3d 657, 674 (5th Cir. 2017) (Clement, J., dissenting) ("[T]o avoid the result reached by the majority here, during jury selection the prosecution would not only have had to explain why it struck specific black jurors—as it did—but also why it did *not* strike all white prospective jurors as well. There is nothing in *Batson*, *Miller-El II*, or any

other case that compels anything of the sort.") (emphasis in original), *rev'd,* 885 F.3d 832 (5th Cir. 2018) (en banc) (adopting Judge Clement's dissenting opinion on rehearing en banc). *Miller-El II* requires consistency, not prophecy. As such, jurists of reasons could not debate the district court's conclusion rejecting the "ineffective assistance" aspect of Harper's *Batson* claim. *See Nelson*, 952 F.3d at 658. We will not issue a COA this claim.

## D

Harper next argues that his trial counsel was ineffective for failing to object to the introduction of Dr. Moeller's testimony on the basis that it was unreliable under the standard set forth in *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (en banc).[4]

The Supreme Court has acknowledged that testimony from psychologists on likelihood of future dangerousness is rather shaky in general because studies have shown that such testimony is wrong more often than it is right. *See Barefoot v. Estelle*, 463 U.S. 880, 901 (1983) (considering a report from the American Psychiatric Association (APA) stating that psychiatric opinions regarding future dangerousness are wrong "most of the time"); *see also Coble v. State*, 330 S.W.3d 253, 275 n.53 (Tex. Crim. App. 2010) (noting that "[m]ore recent psychiatric and legal articles have reached a similar conclusion [to the APA's amicus brief in *Barefoot*], although some conclude

---

[4] In his habeas petition, Harper repeatedly states that his counsel should have objected to the introduction of Dr. Moeller's testimony based on both *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kelly*. But as the State correctly notes, *Daubert* applies only to proceedings based on the Federal Rules of Evidence. *See Daubert*, 509 U.S. at 588 (discussing Rule 702 of the Federal Rules of Evidence). Harper's trial occurred in a Texas court—not a federal court—so his trial counsel could not have made a *Daubert* challenge. Instead, *Kelly*'s three-element test, which resembles *Daubert*'s test, governs. *See Kelly*, 824 S.W.2d at 573. The rest of this opinion will discuss only whether Harper's trial counsel erred in failing to object to the introduction of Dr. Moeller's testimony under the Texas rules of evidence (a "*Kelly*" challenge).

that the accuracy of clinicians' predictions may now be slightly better than chance when they also use risk assessment and actuarial tools"). Nevertheless, the Supreme Court in *Barefoot*, 463 U.S. at 901, and the Texas Court of Criminal Appeals in *Coble*, 330 S.W.3d at 275–77, each concluded that expert testimony on future dangerousness may be admissible in some cases if it is reliable.

Even if we assumed that Harper's counsel rendered ineffective assistance, it is beyond debate that Harper fails *Strickland*'s second prong—prejudice—for two reasons: (1) the record shows that the trial court would have denied a *Kelly* objection, and (2) there was ample evidence of future dangerousness in the record apart from Dr. Moeller's testimony.

First, a *Kelly* objection would have been futile. While Harper's counsel did not specifically make a *Kelly* objection, he did "object to [Dr. Moeller's] testimony as having any value if it's from a lay perspective." Harper's counsel also told the court, as a part of his argument that Dr. Moeller should not be able to testify, that the prosecution was "not calling Dr. Moeller to explain his report . . . . [t]hey're calling Dr. Moeller to disavow that report." The court overruled those objections. It is exceedingly unlikely that the court would have changed its mind had Harper's counsel merely uttered the words "*Kelly*" or "*Daubert*." *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (no ineffective assistance of counsel for failing to make an objection that would have been overruled).

Second, there was ample evidence supporting the jury's finding on future dangerousness even without Dr. Moeller's testimony. First and foremost, there was the evidence of this crime: Harper brutally murdered four people, including two young girls. The jury also heard evidence that he raped and killed another woman back in 1989, put a knife to a woman's neck and robbed her, forced a different woman into his car and assaulted her,

assaulted a cab driver and refused to pay his fare, stole a purse from a former co-worker and withdrew $800 from her account before being arrested, stole a woman's purse and pushed her pregnant sister into a shopping cart before stealing a car and fleeing the scene, and took another woman's purse, knocked her down, and again fled in a car.

In light of this overwhelming evidence that Harper was dangerous, there is no room for jurists of reason to even debate whether Dr. Moeller's testimony caused prejudice. *See Coble*, 330 S.W.3d at 281 (erroneously admitted testimony from psychologist on likelihood of future dangerousness did not cause prejudice because there was "ample evidence" of such dangerousness "quite apart from [the psychologist's] testimony"); *see also Busby v. Davis*, 925 F.3d 699, 723 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 897 (2020) (no ineffective assistance of counsel because it was "highly likely" that the result would have been the same without the error).[5]

### E

Harper's final argument on appeal is that his trial counsel was ineffective for not arguing that his mental illness rendered his confession involuntary. He argues that had counsel raised this argument, there is a reasonable probability that the trial court would have suppressed his confession, or that at least one juror would have voted to acquit.

We are not the first court to address this issue. The habeas court rejected Harper's claim. It found that trial counsel was not ineffective, as a matter of state law, because that court *did* consider whether Harper's claim

---

[5] The State also argues that this entire line of argument is procedurally barred. Harper responds that we should excuse the default, citing the equitable exception set forth in *Martinez v. Ryan*, 566 U.S. 1 (2012). *See also Trevino v. Thaler*, 569 U.S. 413 (2013). We need not address these points, because even if we were to both identify and excuse Harper's default, the prejudice prong is beyond debate and is therefore independently dispositive.

was voluntary. The habeas court noted that the trial court watched the video of Harper's confession which showed that Harper was given his *Miranda* warnings, asked questions about the warnings, and did not appear intoxicated or otherwise impaired. Based on these facts, the trial court found that Harper was not coerced in any way, and it admitted the confession. Given the trial court's findings, the state habeas court concluded that the result would not have been any different had trial counsel made this additional argument. The habeas court also concluded that it was "speculative at best that at least one juror would have found the applicant's confession involuntary."

The habeas court's findings were not an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). The trial court and the jury were both able to watch Harper's confession and heard testimony about his mental health. Based on these facts, they were able to consider what probative value Harper's confession had even without a specific argument from Harper's trial counsel. Because it is beyond debate that the habeas court's decision was reasonable, no COA will issue on this claim.

## III

We DENY Harper's application for a COA on all claims.