# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2025

Lyle W. Cayce
Clerk

No. 24-70002

———————————

Amos Wells,

*Petitioner—Appellant*,

*versus*

Eric Guerrero, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-1384

———————————————————————

Before Stewart, Graves, and Oldham, *Circuit Judges*.

Per Curiam:[*]

A Texas jury convicted Amos Wells of multiple murders and sentenced him to death. After exhausting his appeals and postconviction remedies in state court, Wells sought postconviction relief in federal court. The district court denied it. Now Wells asks us for a certificate of

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

appealability ("COA"). Because his claims are not debatable amongst jurists of reason, we deny his application.

I

On July 1, 2013, Amos Wells became angry with his pregnant girlfriend, Chanice Reed, for refusing to answer his phone calls. He drove to her home with a gun in his truck. When he arrived, he took Chanice outside and the two argued. Wells shot Chanice four times and killed her; Wells shot Chanice's mother twice and killed her; and Wells shot Chanice's ten-year-old brother, Eddie, four times and killed him. Wells also killed Chanice's unborn baby.[1] *Wells v. State*, 611 S.W.3d 396, 403 (Tex. Crim. App. 2020). The shooting stopped when Wells' gun jammed. Wells got into his truck, drove around town, and then went to the police station and confessed.

A jury convicted Wells of capital murder and sentenced him to death. The penalty phase required the jury to find "a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society," and that there were no "sufficient mitigating circumstance or circumstances to warrant" a life sentence without parole instead of the death penalty. The jury made those requisite findings and Wells received a death sentence. He brought a direct appeal to the Texas Court of Criminal Appeals, raising thirteen points of error. *Id.* at 402. The CCA found no error and affirmed the conviction and sentence.

Wells sought post-conviction habeas relief in state court and appealed its denial to the Texas Court of Criminal Appeals and Supreme Court of the United States. *See Ex parte Wells*, No. WR-86, 184-01, 2021 WL 5917724 (Tex. Crim. App. Dec. 15, 2021), *cert. denied sub nom.*, *Wells v. Texas*, 142 S.

---

[1] Postmortem DNA testing confirmed that Wells was, in fact, the child's father. *Id.*

Ct. 2722 (2022). He then brought a federal habeas petition in the Northern District of Texas, raising nine claims. The district court found all meritless and denied the petition along with Wells's accompanying motions to stay state proceedings and for a COA. *Wells v. Lumpkin*, No. 4:21-CV-01384-O, 2023 WL 7224191 (N.D. Tex. Nov. 2, 2023). Wells filed a motion under Rule 59(e) to alter or amend the judgment, which the district court also denied. Wells timely appealed.

## II

Wells requests a certificate of appealability on four of his claims. *See* 28 U.S.C. § 2253(c)(3) (limiting the availability of a COA to a "specific issue or issues"). We "may issue" a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). That standard requires a petitioner to "demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). If the district court's ruling rested on procedural grounds, the prisoner must show both that the procedural ruling is debatable and that it is debatable whether he stated a valid claim. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

"The COA inquiry . . . is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). Thus, at this preliminary COA stage, we do not consider the *merits* of Wells' claims— only whether he has shown that the district court's resolution of them is *debatable* amongst jurists of reason. *See id.*

None of Wells' claims meets the COA standard. We first (A) hold that jurists of reason would not debate whether Wells' trial counsel rendered ineffective assistance by (1) presenting expert testimony about his possible genetic predisposition to violence and (2) failing to strike a particular juror who allegedly believed that the death penalty should be mandatory for those guilty of murder. We then (B) explain that jurists of reason would not debate whether the trial court violated the Eighth Amendment by excluding certain potentially mitigating video evidence. Finally, we (C) hold that jurists of reason would not debate whether Wells' appellate counsel rendered ineffective assistance by failing to argue that Eighth Amendment issue on appeal.

A

Ineffective assistance of counsel ("IAC") claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. The defendant must also show prejudice, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

Where a defendant's IAC claim is adjudicated under § 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). So the state court's determination "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*, *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (describing this review as "doubly deferential"). So, in addition to respecting the state court's decision, we afford a "strong presumption of

reasonableness" to Wells' counsel. *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (per curiam) (quotation omitted); *Titlow*, 571 U.S. at 15. Even where "counsel's conduct was far from exemplary," relief is warranted only where "*every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision." *Dunn*, 594 U.S. at 739–40 (emphasis in original) (cleaned up).

And under *Buck*, we do not ask if the district court correctly applied these legal rules. We ask only whether the district court's resolution of the claim is debatable amongst jurists of reason. *See Buck*, 580 U.S. at 115.

1

Wells first contends trial counsel rendered IAC by presenting expert testimony that he was genetically predisposed to violence at the penalty phase. The defense's theory went as follows: Mutations in the Monoamine Oxidase A ("MAOA") gene can affect the brain's metabolism of serotonin. When combined with childhood abuse, low-activity MAOA mutations increase the likelihood of future violent behavior and difficulty controlling anger. Wells' team of experts determined that he had the low-activity MAOA mutation and a "semi traumatic environment in formative years," contributing to "a greater likelihood that [Wells] could have explosive and violent outbursts in his lifetime."

Wells now objects to this strategy on two grounds: First, he argues it conceded a necessary element to the prosecution. *See* ROA.5861 (requiring jury to find a "probability" that Wells "would commit future acts of violence" at penalty phase). Second, he contends that it permitted the jury to convict him based on an "immutable genetic trait." *see Buck*, 580 U.S. at 123 ("Dispensing punishment on the basis of an immutable characteristic flatly contravenes th[e] guiding principle" that "[o]ur law punishes people for what they do, not who they are."). The CCA rejected this claim on the

merits. And the district court held the claim "border[s] on frivolous." *Wells*, 2023 WL 7224191, at *10.

Jurists of reason would not debate the district court's resolution of this claim. The record shows that the state habeas court acknowledged the "wide range of reasonable professional assistance" and the "heavy measure of deference" due to strategies developed for trial. It accordingly declined to evaluate counsel's performance using the "twenty-twenty vision of hindsight." And it acknowledged the danger of using evidence like this, which is often "a double-edged sword that jurors could consider either as sufficiently mitigating evidence or as powerful evidence of future dangerousness."

Wells' counsel acknowledged all along that this evidence could support a positive finding on the issue of future violence. *See* ROA.15978 (memorandum of trial counsel submitted in 2016) (acknowledging this evidence "could potentially help the State's efforts" to show a probability of future violence). Counsel nonetheless believed it "could be a sufficiently mitigating fact" because Wells chose neither his genetics nor his childhood experiences, diminishing his perceived culpability. So counsel concluded it might "ultimately help [Wells'] chances of not receiving the death penalty." Additionally, Wells' genetic expert testified that the increased probability of violence "doesn't mean it's likely to happen; it means he's more likely than an average person." His counsel argued that the genetic testimony "gives you cause to pause" and asked whether Wells should receive the death penalty "when we know there are [three] things he couldn't control . . . genes, his brain, and his environment."

Whether to present such evidence lies within the heartland of "strategic decisions" that appellate courts cannot second-guess unless the defendant rebuts their "strong presumption of reasonableness." *Dunn*, 594

U.S. at 739 (quotation omitted). That is precisely why the federal district court rejected Wells' claim. *See Wells*, 2023 WL 7224191, at *11 (describing this theory as "nothing more than mere post-hoc disagreement with trial counsel's strategy"). And we do not think the district court's treatment of this claim is debatable among jurists of reason.

2

Wells further argues his trial counsel rendered IAC by failing to strike a juror based on his comments about the death penalty during voir dire. *Strickland* also governs challenges to counsel's failure to strike or challenge prospective jurors for cause. *Harper v. Lumpkin*, 64 F.4th 684, 692 (5th Cir. 2023); *see also id.* at 693 (holding that no "clearly established federal law . . . would allow reasonable jurists to debate th[e] conclusion" that counsel was not ineffective when it failed to challenge jurors who "expressed the opinion that they could answer the special issues in such a way that either life or death would result based on the evidence and the law").

In a voir dire questionnaire, one prospective juror indicated he believed the death penalty should apply to those found guilty of murder. During his voir dire examination, however, the juror accepted that Texas law requires aggravating factors in addition to a mere finding of guilt to impose a death sentence. He also pledged that he would not always find a defendant dangerous in the future and would answer the special issues based on the evidence adduced at trial. At the end of examinations from both the prosecution and the defense, the juror affirmed he "might give [Wells] a death sentence and [he] might not."

We have held that failure to strike a juror is constitutionally permissible when he pledges during voir dire to follow the law. *Harper*, 64 F.4th at 693. Moreover, trial counsel may make reasonable strategic decisions in striking or not striking prospective jurors. *Cf. Morgan v. Illinois*, 504 U.S.

719, 729 (1992) ("The Constitution, after all, does not dictate a catechism for voir dire . . .").

The CCA rejected this claim on the merits. And the district court held "[t]his claim fails to satisfy either prong of *Strickland* under *de novo* review and does not warrant federal habeas relief." *Wells*, 2023 WL 7224191, at *21.

Jurists of reason would not debate the district court's decision. Trial counsel explained that he was concerned about peremptorily striking the juror because he was a minority, fearing that it would undermine his *Batson* challenge. Trial counsel was also concerned that using one of his peremptory strikes could result in a "much worse" juror getting seated. The district court therefore held there were no grounds for a for-cause strike, and that Wells suffered no prejudice in any event. Jurists of reason would not debate that decision.

B

Wells also alleges the trial court violated his Eighth Amendment right to present mitigating evidence by excluding certain video evidence—specifically, video evidence of Wells' purported remorsefulness in the police interrogation room. "[T]he Eighth Amendment requires that the jury be able to consider and give effect to a capital defendant's mitigating evidence." *Tennard v. Dretke*, 542 U.S. 274, 285 (2004) (quotation omitted). The decision to exclude such evidence "is quintessentially a trial error subject to harmless error review." *Rhoades v. Davis*, 914 F.3d 357, 368 (5th Cir. 2019).

Wells' counsel sought to introduce the recording during the penalty phase to show Wells "was acting strange" or "under some distorted emotional sense." **ROA.13495–96**. The video lasts about eight hours and depicts his initial, hourlong interview, six hours of Wells' detention, and his second, hourlong interview. *Wells*, 611 S.W.3d at 407. During the downtime

between the interviews, Wells exhibited some strange behavior and made repeated comments like "This is too weird" and "This is a dream." *Id.* Wells contends this evidence tended to show his remorse, and such remorsefulness could constitute mitigating evidence at sentencing.

The CCA held this claim was procedurally defaulted because Wells never tried to introduce the evidence to show remorse and because some of the evidence did not satisfy the State's hearsay rules. And in any event, the CCA held the claim was meritless because any error was harmless beyond a reasonable doubt. On federal review, the district court held that the CCA's ruling constituted an adequate and independent state ground that barred federal relief. *Wells*, 2023 WL 7224191, at *8. To secure a COA, Wells must show both that the district court's procedural ruling is debatable and that the underlying constitutional claim is debatable. *Slack*, 529 U.S. at 484.

Neither ground is debatable. As to the district court's procedural ruling, the record shows that Wells failed to make the specific evidentiary proffer required by Texas law. *Golliday v. State*, 560 S.W.3d 664, 669–70 (Tex. Crim. App. 2018); TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1(a)(1)(A). Nor would jurists of reason debate the district court's application of Texas's evidentiary rules.

In any event, Wells has failed to show that the underlying merits are debatable. That is because jurists of reason would conclude that, at best, the excluded evidence was cumulative. The jury saw several pieces of evidence that showed the same alleged remorse: a video of Wells taken immediately after the offense and before the excluded video began, officer's testimony about his "trance-like demeanor," testimony about a phone call Wells made "immediately after the shootings," and evidence about his suicidal and distraught state. That is a considerable amount of material showing Wells' mental state after the murders. *Cf. Wong v. Belmontes*, 558 U.S. 15, 23 (2009)

("Additional evidence on these points would have offered an insignificant benefit, if any at all.").

Additionally, trial counsel presented a host of other mitigating evidence attempting to demonstrate the same attributes Wells contends the video would show. That included testimony from family members, doctors and mental health professionals, people from his childhood, and Wells himself. Wells has shown no reason to think that "the evidence in favor of mitigation and the evidence against mitigation [was] so delicately balanced that the excluded . . . video would have been enough to tip the scales." *Wells*, 611 S.W.3d at 418.

In short, Wells cannot show that the district court's procedural ruling was debatably wrong. Nor can he show that the merits underlying his Eighth Amendment claim are debatable.

## C

Finally, Wells contends that his appellate counsel rendered IAC on state direct review by failing to object to the trial court's exclusion of three "jailhouse media interviews" from the day after the murders. These videos showed Wells "cr[ying], express[ing] his desire to die, and apologiz[ing]." Appellate counsel initially challenged only the exclusion of the interrogation room video, not the next day's news clips.

This claim is subject to the *Strickland* standard, as clarified in *Smith v. Robbins*, 528 U.S. 259 (2000). Appellate counsel provides IAC where he acts "objectively unreasonabl[y]," *id.* at 285, in "fail[ing] to discover nonfrivolous issues and [filing] a merits brief raising them." *Id.* The defendant must also show prejudice. *Id.* at 286. Generally, to succeed on this kind of claim, defendants must instead show that omitted issues "are clearly stronger than those presented." *Id.* at 288 (quotation omitted). That requirement respects counsel's strategic discretion: "[A]ppellate counsel

who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.*

The CCA rejected this claim on the merits. It concluded that any error was harmless because the jury considered "better, more compelling evidence" of Wells' mental condition shortly after the murders. And the district court held Wells' ineffective-assistance-of-appellate-counsel "claims fail to satisfy the prejudice prong of *Strickland* and thereby fail to warrant federal habeas relief." *Wells*, 2023 WL 7224191, at *24.

Jurists of reason would not debate the district court's resolution of this claim. During state habeas proceedings, appellate counsel submitted an affidavit stating that he raised "all of the points of error in the appeal that [he] determined to have merit." He appealed exclusion of the interrogation video over the others because he "thought [it] had the best chance" of aiding reversal. For good reason: The jailhouse media interview videos contained highly negative commentary about Wells from reporters, the victims' family members, and a neighbor. We therefore do not think jurists of reason would debate the district court's rejection of this claim.

\*     \*     \*

Wells has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, his motion for a COA is DENIED.